DANIEL PACKER *v.* ELIAS H. STEWARD.

*Alteration of Parol Contract. Statute of Frauds. Evidence. Breach of Contract.*

Where a contract, not reduced to writing, is taken out of the operation of the statute of Frauds by the payment of earnest money, it does not contravene the spirit or policy of the statute to allow its terms to be varied by parol in respect to the time of its performance.

If A., by parol contract, purchase goods of B., to be delivered at a future day, and earnest money be paid, a sale of the goods by B. to a third person before the time for the performance of the contract with A. has expired, will entitle A. to recover of B. the earnest money so paid, under the money counts, and will excuse A. from any duty to tender performance on his part.

And if A., after such sale by B. to a third person, and before the expiration of the time limited for the performance of his contract, tender the performance of it on his part, he may maintain an action against B. for the recovery of proper damages for such breach of contract.

ASSUMPSIT. Plea the general issue, and trial by jury at the March Term, A. D. 1860. PIERPOINT, J., presiding.

The plaintiff's evidence on the trial tended to show that on or about the 25th day of November, A..D. 1858, he went to the defendant's house in Clarendon, and after examining the defendant's wool, estimated at about twenty-five hundred pounds, made a contract with the defendant to purchase the same, at the price of forty-six cents per pound, and to pay the purchase money therefor, with the interest thereon, and take the wool away on or before the 15th day of December then next ensuing; and that at the time of making the contract the plaintiff paid fifty dollars to the defendant as earnest money, or in part payment for the wool.

The evidence further tended to show that the plaintiff, not having sold the wool as he expected, on the 11th day of December, went to Clarendon, where he saw the defendant, and informed him he might not be able to pay for the wool by the 15th, as he had not sold it, but that he thought he should be able to sell it in January, and that it was finally agreed to extend the time to the first of February; that on the 27th day of January, 1859, he again went to the defendant with one Bottomly, with whom the plaintiff was in negotiation to sell that and other lots of wool, and introduced Bottomly to the defendant, and told him that they had come to examine the wool, with a view to a purchase by Bottomly; that the defendant assisted the plaintiff and Bottomly in overhauling and examining the wool, and after they got through, the plaintiff told the defendant he should probably sell the wool to Bottomly, and he would be at the defendant's place and take and pay for the wool, as soon as Bottomly could go down to Leicester, Mass., where he resided, and get back with the money and his sacks for sacking the wool, and that he would inform the defendant of his sale to Bottomly; to which the defendant said, "very well;" that he sold the wool to Bottomly, who started the next morning for his home in Massachusetts, to procure the money and sacks; that the plaintiff sent a request by Joseph Packer, Jr., to one John Miller, of Wallingford, that he would, in behalf of the plaintiff, inform the defendant that the plaintiff had sold the wool to Bottomly, and that the defend-

ant had since admitted to him that he had received the message ; that the said Bottomly returned to the residence of the plaintiff in Mount Holly, in the afternoon of the 1st of February, and that he and the plaintiff went to the residence of the defendant, about nine o'clock in the morning of the 2d day of February, with the sacks and money, prepared to pay for and take away the wool, and so informed the defendant, who then said he had sold the wool to one Langdon for fifty cents per pound, and refused to let the plaintiff have it.

Joseph Packer, Jr., a witness introduced by the plaintiff, testified, that on Saturday, the 29th of January, just at night, he met the defendant near his home, when the defendant said, "I understand your uncle (naming the plaintiff,) has sold his wool ;" to which the witness replied that he had ; and that he, the witness, had carried a message from the plaintiff to John Miller, requesting him to inform the defendant of that fact ; that the defendant replied that his father-in-law, Deacon Button, had received a letter from Miller to that effect, and that he was glad the wool was sold, as he feared the plaintiff would hold on too long. The witness then said, "Uncle is fearful Bottomly will not get here in time, it is so stormy ;" to which the defendant replied, "It will make no material difference if he does not get here in two or three days."

The plaintiff further offered to prove that owing to unusual snow storms, ensuing between the 27th day of January and the 2d day of February, the railways and highways were so blocked up, that Bottomly was unable, between the 27th day of January and the expiration of the 1st day of February, to go to his home in Massachusetts and get back to the defendant's place at an earlier period than he did, which testimony was objected to by the defendant and excluded by the court.

The plaintiff also offered to prove that the defendant sold his wool to Langdon on the 1st day of February, 1859, which testimony was likewise objected to by the defendant and excluded by the court.

The court held that the evidence introduced by the plaintiff was insufficient to sustain the action, and directed a verdict for

10

Packer *v.* Steward.

the defendant. To the several rulings of the court the plaintiff excepted.

*D. E. Nicholson* and *Daniel Roberts*, for the plaintiff.

*E. Edgerton* and *E. J. Phelps*, for the defendant.

KELLOGG, J. The plaintiff's evidence on the trial of this case tended to show that on the 25th November, 1858, or about that time, he made a contract with the defendant for the purchase of his lot of wool, estimated to be about twenty-five hundred pounds, at the price of forty-six cents per pound, and that, by the contract, the wool was to be paid for, with interest, and taken away by the plaintiff, by the 15th December following ; that, at the time of making the contract, the plaintiff paid fifty dollars to the defendant as earnest money or in part payment for the wool, and that, on the 11th December, 1858, it was agreed between the plaintiff and the defendant that the time for the payment of the balance of the purchase money, and for the delivery of the wool, should be extended from the 15th December to the 1st day of February following. Neither the original contract nor the agreement for its extension were in writing. The only question made upon this part of the case by the defendant, is that this enlargement of the time for the performance of the original contract constituted a *new* contract, and that, as it was not in writing and no additional earnest money was paid, it falls within the statute of frauds. Where a particular time is appointed by the terms of the contract of sale for the delivery of and payment for property of a fluctuating value, and the payment and delivery are to be concurrent acts, the time so appointed is of the essence of the contract. The original contract for the purchase and delivery of the wool was taken out of the statute of frauds, when it was made, by the payment and acceptance of the earnest money. While it remained executory, and in unquestioned force, it was varied by the agreement of the parties only in respect to the time for its performance. An alteration by parol of the terms of a written contract under the provisions of the

statute of frauds cannot be binding, for the reason that the alteration creates a new contract whi?h it would be necessary to prove partly by parol evidence, and this principle applies as well to contracts for the sale of goods, wares, and merchandize as for the sale of lands. *Stead* v. *Dawber*, 10 Ad. & El. 57, (37 E. C. L. 40.) *Marshall* v. *Lynn*, 6 Mees. & Welsb. 109. But where a contract for the sale of goods is taken out of the statute of frauds by the payment of earnest money, and, as in this case, is not reduced to writing, it does not contravene the spirit or policy of the statute to allow its terms to be varied by parol any more than it would to allow the terms of the original contract to be thus proved. In such a case, the original contract is treated as still remaining, and no new consideration is requisite for an alteration of its terms in respect to the time for its performance,—" the consideration for the old agreement being imported into the new agreement which is substituted for it,"— as was said by Lord DENMAN, C. J., in *Stead* v. *Dawber*, *ubi supra.* We think, therefore, that it was competent for the parties to this contract to extend or vary the time for its performance, by a subsequent parol agreement, at any time while it remained executory, without any new consideration.

The question then arises, whether the plaintiff's evidence tended to show such a waiver or extension by the defendant of the time for the performance of this contract as bound him to accept the plaintiff's offer of performance made on the 2d day of February, 1859. It is claimed on the part of the plaintiff that the evidence in respect to the interview between himself and the defendant on the 27th January, 1859, tended to show such a modification of the terms of the original contract. At the time of this interview, the contract as limited to the 1st February was in admitted force ; and the plaintiff's testimony tended to show that he, with one Bottomly, a wool dealer, went to the defendant's house in Clarendon, and examined the wool, and that the defendant assisted in the examination, and then knew that the plaintiff was negotiating with Bottomly, for the purpose of selling to him this lot and other lots of wool ; and the proof is, that the plaintiff told the defendant, on that occasion, that he should probably sell the wool to Bottomly, and that he would come and

take and pay for the wool as soon as Bottomly could go to Lei-
cester, Massachusetts, where he resided, and get back with the
money and sacks for sacking the wool, and that he would inform
the defendant of the sale which he expected to make to Bottomly,
to which the defendant replied "very well." This was a prop-
osition by the plaintiff to take and pay for the wool as soon as
Bottomly could go to Leicester, and return with the money to
pay for it and the sacks for sacking it, in case the plaintiff should
sell the wool to him as the result of the pending negotiation
with him, and to give the defendant notice of such sale to Bot-
tomly if it should be made; and the proposition implied that
Bottomly should use reasonable diligence in making the journey
to Leicester, and on his return. If, in the exercise of such dili-
gence, Bottomly could have performed the journey before the 1st
February, this proposition would not have required any exten-
sion of the time for the performance of the contract, but, if he
could not have made the journey by the use of such diligence
before that time, then the proposition necessarily implied an
extension of the contract to such time beyond that day as would
allow to Bottomly an opportunity by the use of reasonable dili-
gence to make the journey. In this light it was a proposition
to waive or extend the time for the performance of the contract,
and to treat and act upon the contract as a continuing contract
after the appointed period; and the testimony of Joseph Packer,
Jr., tended to show that the defendant so understood the propo-
sition. We are of opinion that this testimony was proper for
the consideration of the jury, and should have been submitted
to them as tending to show such an extension of the contract
beyond the appointed period by the consent of the defendant,
and, in its connection with the other evidence in the case in
respect to the plaintiff's performance of the terms of the propo-
sition on his part, as tending to support his action. The ques-
tion whether Bottomly did use reasonable diligence in making
his journey, and returning, depended upon the facilities and
actual hazards and casualties connected with the usual course of
travel on the route over which it would be necessary for him to
pass, as existing at that time; and the testimony which was
offered on the part of the plaintiff to show that the railways and

Packer *v.* Steward.

highways on the route of travel, between the defendant's residence in Clarendon and the residence of Bottomly in Leicester, were obstructed and blocked up with snow drifts was proper to be taken into consideration in determining this question, and the question itself, on the testimony offered, was one of fact which should have been submitted to the jury.

The plaintiff offered to prove on the trial that the defendant sold his wool to one Langdon on the 1st day of February, or before the time for the performance of the contract between the plaintiff and defendant had expired. Understanding this as an offer to prove such a sale of the wool by the defendant as passed the property in it from him to Langdon, so that the defendant thereby disabled himself from performing his contract with the plaintiff, we regard this evidence as clearly admissible. A sale by the defendant to a third party before the time for the performance of his contract with the plaintiff had expired, was a breach of that contract, which, whether it was known to the plaintiff or not, excused the plaintiff from any duty to tender a performance of it on his part, and it would entitle him to recover from the defendant, under the money counts, the money which he had paid under the contract. And if, after such sale by the defendant to a third person, the plaintiff had, before the expiration of the time limited for the performance of his contract, tendered a performance of it on his part to the defendant, he could have maintained an action against the defendant for the recovery of proper damages for such breach of contract. *Bowdell* v. *Parsons*, 10 East. 359. *Newcomb* v. *Brackett*, 16 Mass. 161. Addison on Contracts, 236.

We have not considered the questions of variance between the plaintiff's proof and his declaration which were suggested on the argument ; as, in the view which we take of the evidence, it tended to support the money counts in the declaration, even if it was applicable to no other counts. As the result of our conclusions, the judgment of the county court for the defendant is reversed, and the cause is remanded to that court for a new trial.